TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
CHRISTOPHER C. KENDALL (Cal. Bar No. 274365)
Assistant United States Attorney
Deputy Chief, International Narcotics,
  Money Laundering, and Racketeering Section
LINDSAY M. BAILEY (Cal. Bar No. 285047)
Assistant United States Attorney
Deputy Chief, General Crimes Section
     1400/1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:     (213) 894-2576/6875
     Facsimile:     (213) 894-0142
     E-mail:        christopher.kendall@usdoj.gov
                    lindsay.bailey@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 18-466-DSF-13 |
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date:  October 26, 2021<br>Trial Time:  8:30 a.m. |
| IVAN GARCIA-CRUZ | Location:    Courtroom of the Hon.<br>Dale S. Fischer |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Christopher C. Kendall and Lindsay M. Bailey hereby files its trial memorandum.

///

///

///

///

This trial memorandum is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 18, 2021                 Respectfully submitted,

                                        TRACY L. WILKISON
                                        Acting United States Attorney

                                        SCOTT M. GARRINGER
                                        Assistant United States Attorney
                                        Chief, Criminal Division

                                        CHRISTOPHER C. KENDALL
                                        LINDSAY M. BAILEY
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                              PAGE

I.   STATEMENT OF CHARGES...........................................1

     A.   Count Two – Drug Conspiracy...............................1

     B.   Counts Six and Seven – Possession of
          Methamphetamine/Cocaine with Intent to Distribute.........1

II.  GOVERNMENT'S CASE IN CHIEF.....................................2

     A.   Factual Summary...........................................2

     B.   Procedural Background.....................................3

     C.   Time Estimate.............................................5

     D.   Witnesses.................................................5

III. EVIDENTIARY ISSUES............................................5

     A.   Defendant's Statements....................................5

          1.   Co-Conspirator Statements............................6

          2.   Defendants' Hearsay Statements.......................7

          3.   Lay Opinion Testimony................................7

          4.   Translations of BlackBerry Messenger
               Conversations........................................8

     B.   Authentication, Identification, and Chain of Custody
          of Physical Evidence......................................8

     C.   Business Records.........................................10

     D.   Photographs..............................................10

     E.   Certified DMV Records....................................11

     F.   Truth Testimony Provision of Cooperation Agreement.......11

     G.   Expert Testimony.........................................12

     H.   Use of Exhibits During Opening Statement.................12

     I.   Cross-Examination of Defendant...........................12

     J.   Reciprocal Discovery and Expert Disclosures..............13

     K.   Character and Impeachment Evidence.......................13

       1.   Character Evidence....................................13

       2.   Prior Convictions....................................14

L.   Affirmative Defenses......................................14

M.   Jury Nullification.......................................14

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

**Cases**

Bourjaily v. United States,
   483 U.S. 171 (1987) ............................................... 6

Michelson v. United States,
   335 U.S. 469 (1948) ........................................... 13, 14

People of Territory of Guam v. Ojeda,
   758 F.2d 403 (9th Cir. 1985) .................................... 11

Reyes v. United States,
   383 F.2d 734 (9th Cir. 1967) ..................................... 9

United States v. Black,
   767 F.2d 1334 (9th Cir. 1985) .................................... 9

United States v. Blackwood,
   878 F.2d 1200 (9th Cir. 1989) .................................... 9

United States v. Chu Kong Yin,
   935 F.2d 990 (9th Cir. 1991) ..................................... 9

United States v. Crespo de Llano,
   838 F.2d 1006 (9th Cir. 1988) .................................... 6

United States v. Fernandez,
   839 F.2d 639 (9th Cir. 1988) ..................................... 7

United States v. Freeman,
   498 F.3d 893 (9th Cir. 2007) ..................................... 7

United States v. Fuentes-Montijo,
   68 F.3d 352 (9th Cir. 1995) ...................................... 8

United States v. Harrington,
   923 F.2d 1371 (9th Cir. 1991) .................................... 9

United States v. Hursh,
   217 F.3d 761 (9th Cir. 2000) .................................... 14

United States v. Matta-Ballesteros,
   71 F.3d 754 (9th Cir. 1995) ...................................... 9

<u>United States v. McCollom</u>,
   664 F.2d 56 (5th Cir. 1981) ..................................... 14

<u>United States v. Miranda-Uriarte</u>,
   649 F.2d 1345 (9th Cir. 1981) ................................... 12

<u>United States v. Monroe</u>,
   943 F.2d 1007 (9th Cir. 1991) ............................... 11, 12

<u>United States v. Paris</u>,
   812 F.2d 471 (9th Cir. 1987) ..................................... 6

<u>United States v. Powell</u>,
   955 F.2d 1206 (9th Cir. 1992) ................................... 15

<u>United States v. Taghipour</u>,
   964 F.2d 908 (9th Cir. 1992) ..................................... 8

<u>United States v. Winters</u>,
   530 F. App'x 390 (5th Cir. 2013) ............................... 11

<u>United States v. Yarborough</u>,
   852 F.2d 1522 (9th Cir. 1988) ................................... 6

<u>Zal v. Steppe</u>,
   968 F.2d 924 (9th Cir. 1992) ................................... 15

**Statutes**

21 U.S.C. § 841(a)(1) .......................................... 1, 3
21 U.S.C. § 846 ............................................... 1, 3

**Rules**

Fed. R. Evid. 401 ............................................ 4, 15
Fed. R. Evid. 403 ................................................ 7
Fed. R. Evid. 405(a) ........................................... 13
Fed. R. Evid. 609 .............................................. 14
Fed. R. Evid. 701 ............................................... 7
Fed. R. Evid. 801(c) ............................................ 7
Fed. R. Evid. 801(d)(2)(A) ...................................... 7
Fed. R. Evid. 803(6)(D) ........................................ 10
Fed. R. Evid. 803(8) ........................................... 11
Fed. R. Evid. 901(a) ............................................ 8
Fed. R. Evid. 902(1) ........................................... 11
Fed. R. Evid. 902(4) ........................................... 11
Fed. R. Evid. 902(11) .......................................... 10
Fed. R. Evid. 1002 ............................................. 10

**Other Authorities**

32 McCormick On Evid. § 215..........................................10

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    STATEMENT OF CHARGES[1]**

### A.    Count Two — Drug Conspiracy

Count Two charges defendant with conspiracy to distribute controlled substances, in violation of 21 U.S.C. § 846, which has the following elements:

(1) beginning on an unknown date and ending on or about July 24, 2018, there was an agreement between two or more persons to distribute, or possess with intent to distribute, a controlled substance; and

(2) the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

(Ninth Circuit Model Criminal Jury Instructions, No. 9.19.)

### B.    Counts Six and Seven — Possession of Methamphetamine/Cocaine with Intent to Distribute

Count Six charges defendant with possession of methamphetamine with intent to distribute, and Count Seven charges defendant with possession of cocaine with intent to distribute, both in violation of 21 U.S.C. § 841(a)(1), which has the following elements:

(1) defendant knowingly possessed methamphetamine/cocaine; and

(2) defendant possessed it with the intent to distribute it to another person.

It does not matter whether defendant knew that the substance was a particular controlled substance.  It is sufficient that defendant knew that it was some kind of a prohibited drug.

---

[1] All elements listed are drawn from the Ninth Circuit Model Jury Instructions, where available.

1

To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of the controlled substance to another person, with or without any financial interest in the transaction.

A person has possession of something if the person knows of its presence and has physical control of it, or knows of its presence and has the power and intention to control it.  (Ninth Circuit Model Criminal Jury Instructions, No. 9.18.)

## II.   GOVERNMENT'S CASE IN CHIEF

### A.   Factual Summary

The government will prove at trial beyond a reasonable doubt that, defendant IVAN GARCIA-CRUZ ("defendant") entered into a conspiracy with co-defendants Victor Alfredo Salazar Corrales ("Salazar") and Noel Lugo Esquivel ("Esquivel), among others, to distribute controlled substances by moving drugs from Sinaloa, Mexico to the United States.  In order to effectuate this scheme, defendant would directly communicate with Salazar over BlackBerry Messenger services, where he used the screen name "Brilloso."  Through text messages, defendant and Salazar discussed transporting narcotics from Mexico into Los Angeles, after which defendant would transport the narcotics to Minnesota for further sale.  The two also discussed returning narcotics proceeds to Mexico, their plans to locate and utilize a stash house, and the various in-person meetings they would have when defendant was in Los Angeles.

Agents intercepted the above conversations after obtaining a court-authorized wiretap in approximately September of 2015.  Shortly following these conversations, agents obtained subscriber information for the user of Brilloso's phones and obtained GPS pings to locate

the device.  On numerous occasions in both Los Angeles and Minnesota, agents saw defendant at the same location as the GPS pings, often driving a black GMC Terrain SUV.

Based on the surveillance and identification of defendant, agents obtained a tracking warrant for the GMC Terrain SUV.  On October 13, 2015, agents determined that the GMC Terrain SUV was traveling northbound on Interstate 15 near San Bernardino.  San Bernardino Sheriff's Department Officer Roberto Adelmann located the vehicle on the back of a car carrier and conducted a traffic stop. After obtaining the driver's consent to search the cars in the car carrier, Officer Adelmann located approximately 6 kilograms of methamphetamine and 2 kilograms of cocaine hidden behind the rear quarter panels and inside center console of the GMC Terrain SUV.  A subsequent laboratory analysis determined that the substances consisted of approximately 5,773 grams of 99.5% pure methamphetamine - or 5,744 grams of actual methamphetamine - and approximately 1,995 grams of a mixture or substance containing cocaine.

**B.   Procedural Background**

Defendant is charged with conspiracy to distribute and possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846 (Count 2); possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) (Count 6); and possession of cocaine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii)(Count 7).

Defendant has pleaded not guilty to all charges.  Trial in this matter is scheduled for October 26, 2021 at 8:30 a.m.

On September 27, 2021, the government filed two motions in limine.  First, the government filed a Motion in Limine to Introduce

Other Acts pursuant to Federal Rule of Evidence 404(b).  By this motion, the government moved to admit evidence that defendant engaged in a similar scheme in February of 2016 to show that defendant intended to transport controlled substances from Los Angeles to Minnesota; that he had the knowledge of how to transport drugs inside a hidden compartment in a vehicle; that he had a common plan or scheme on how he would transport drugs from his source of supply in Los Angeles to his customers in Minnesota; and that he was not transporting these drugs by mistake or accident.  Defendant filed his Opposition to this Motion on October 8, 2021, and the government filed its Reply the same date.

Second, the government filed its Motion in Limine To Preclude Improper References, Testimony, and Argument.  Pursuant to Federal Rules of Evidence 401, 402, and 403, the government seeks to preclude defendant and defense counsel from making any arguments (explicit or implicit), using lines of questioning that will elicit, or introducing evidence regarding or otherwise referring to improper topics which would inflame the jury, elicit jury sympathy and/or nullification, including arguments related to the Redemption Theory. Defendant filed his Opposition to this Motion on October 8, 2021.

On October 18, 2021, the parties had their final status conference and motions hearing.  During the hearing, the Court granted the government's first Motion in Limine to Introduce Other Acts pursuant to Federal Rule of Evidence 404(b), and noted defendant's non-objection to the government's second Motion in Limine to Preclude Improper References, Testimony, and Argument.

C.   **Time Estimate**

The government anticipates that its case in chief, including cross examination, will take approximately two to three court days.

D.   **Witnesses[2]**

At this time, the government anticipates calling the following witnesses at trial:

1.   Jeremy Stebbins (FBI)

2.   Michael Cannizzaro (FBI)

3.   Danny Vasquez (Torrance Police Department)

4.   Roberto Adelmann (San Bernardino Sheriff's Department)

5.   Travis Buell (San Bernardino Sheriff's Department)

6.   Ashley Bennett (DEA)

7.   Veronica Garcia

8.   V.S.C.

9.   N.L.E.

III. **EVIDENTIARY ISSUES**

A.   **Defendant's Statements**

At trial, the government will offer BlackBerry Messenger communications obtained by law enforcement using Title III wiretaps. The defendant may not himself seek to introduce wiretapped communications because doing so would run afoul of the rule against hearsay.  Additionally, the government is permitted to provide the jury with English-language transcripts of the communications it seeks to introduce at trial.

---

[2] The government's witness list is subject to change as it continues to prepare for trial.  The government also reserves the right to change the order of witnesses based upon their availability.

1                    1.   Co-Conspirator Statements

2          "Once a conspiracy is shown, the government need present only

3     slight evidence connecting a defendant to the conspiracy."  United

4     States v. Crespo de Llano, 838 F.2d 1006, 1017 (9th Cir. 1988).  This

5     burden is easily met: for example, the Ninth Circuit deemed adequate

6     the fact that a defendant had met with another individual shortly

7     before the latter sold drugs to an undercover agent.  See United

8     States v. Paris, 812 F.2d 471, 476 (9th Cir. 1987).  Co-conspirator

9     statements themselves may be used to establish the existence of a

10    conspiracy even before some separate evidence has proved the

11    conspiracy's existence.  Bourjaily v. United States, 483 U.S. 171,

12    180 (1987).

13         The Ninth Circuit has held Rule 802(d)(2)(E)'s requirement that

14    co-conspirator statements be made "in furtherance" of a conspiracy to

15    be broadly inclusive.  It encompasses, "[m]ost importantly,

16    statements made to keep coconspirators abreast of an ongoing

17    conspiracy's activities."  United States v. Yarborough, 852 F.2d

18    1522, 1535 (9th Cir. 1988).  In addition to statements apprising co-

19    conspirators of the activities of other co-conspirators, Yarborough

20    held that the following capacious categories of statements also

21    qualify as furthering the conspiracy: statements made to "set in

22    motion transactions that are an integral part of the conspiracy," --

23    such as statements of conspirators negotiating drug transactions or

24    directing co-conspirators to transfer or retain possession of

25    firearms; and statements "made to induce enlistment or further

26    participation" in the gang's activities or "prompt further action."

27    Id.

28

                                        6

1          2.   Defendants' Hearsay Statements

2        Because of the volume of intercepted BlackBerry Messages,

3   including many that are either cumulative or irrelevant to the

4   immediate issues at trial, the government will only be introducing a

5   subset of the BlackBerry Messages, some of which will be excerpts

6   rather than entire conversations.  This decision itself follows from

7   the mandate of Rule 403 excluding even relevant evidence that

8   presents a danger of "undue delay, wasting time, or needlessly

9   presenting cumulative evidence."  Fed. R. Evid. 403.

10       Regardless of Rule 403, however, defendants may not seek to

11  introduce his own statements at trial.  Defendant's statements are

12  admissible only if offered against him -- otherwise, they fall within

13  the scope of the rule against hearsay.  Fed. R. Evid. 801(d)(2)(A);

14  United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).  The

15  hearsay rule prohibits a defendant from obtaining the benefit of

16  testifying without subjecting himself to cross-examination by placing

17  his self-serving prior statements before the jury through other

18  witnesses.  Fed. R. Evid. 801(c); Fernandez, 839 F.2d at 640.

19          3.   Lay Opinion Testimony

20       The government may seek to elicit lay testimony from the case

21  agent regarding the meaning of certain intercepted messages, based on

22  his knowledge of the investigation. Lay opinion testimony is

23  admissible if it is (1) "rationally based on the perception of the

24  witness," (2) "helpful to a clear understanding of the witness's

25  testimony or the determination of a fact in issue[,]" and (3) "not

26  based on scientific, technical, or other specialized knowledge within

27  the scope of Rule 702." Fed. R. Evid. 701. See also United States v.

28  Freeman, 498 F.3d 893, 904-05 (9th Cir. 2007) (upholding, as proper

7

1  lay testimony, detective's testimony interpreting ambiguous

2  statements where his "understanding of ambiguous phrases was based on

3  his direct perception of several hours of intercepted conversations.

4  . . . and other facts he learned during the investigation" and his

5  testimony "proved helpful to the jury in determining what

6  [defendants] were communicating during the recorded telephone

7  calls").

8              4.   <u>Translations of BlackBerry Messenger Conversations</u>

9       Defendant's conversations are almost exclusively in the Spanish

10 Language.  Accordingly, the government has prepared English

11 translations of all Spanish language conversations.  The Ninth

12 Circuit has recognized that when the transcript is a translation from

13 a foreign language into English, the transcripts of the English

14 translation are themselves the evidence rather than the recordings.

15 <u>United States v. Fuentes-Montijo</u>, 68 F.3d 352, 355 (9th Cir. 1995)

16 ("[W]hen faced with a taped conversation in a language other than

17 English and a disputed English translation transcript, the usual

18 admonition that the tape is the evidence and the transcript only a

19 guide is not only nonsensical, it has the potential for harm.");

20 <u>United States v. Taghipour</u>, 964 F.2d 908, 910 (9th Cir. 1992)

21 (affirming instruction to the jury that tape was the evidence for the

22 portion of the conversation in English, while the translated

23 transcript was the evidence for the portion of the conversation in

24 Farsi).

25      **B.   Authentication, Identification, and Chain of Custody of**
        **Physical Evidence**
26

27      Federal Rules of Evidence 901(a) provides that "[t]he

28 requirement of authentication or identification as a condition

precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(a) only requires the government to make a prima facie showing of authenticity or identification "so that a reasonable juror could find in favor of authenticity or identification." United States v. Chu Kong Yin, 935 F.2d 990, 996 (9th Cir. 1991); United States v. Blackwood, 878 F.2d 1200, 1202 (9th Cir. 1989); United States v. Black, 767 F.2d 1334, 1342 (9th Cir. 1985). Once the government meets this burden, "the credibility or probative force of the evidence offered is, ultimately, an issue for the jury." Black, 767 F.2d at 1342.

To be admitted, real evidence (i.e., a physical exhibit) must be in substantially the same condition as when the crime was committed. The court may admit the evidence if there is "a reasonable probability the article has not been changed in important respects." United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir. 1991).

The government is not required, in establishing chain of custody, to call all persons who may have come into contact with the piece of evidence. Reyes v. United States, 383 F.2d 734 (9th Cir. 1967). Alleged defects in the chain of custody go to the weight of the evidence rather than to its admissibility. United States v. Matta-Ballesteros, 71 F.3d 754, 769 (9th Cir. 1995), amended on denial of reh'g and reh'g en banc, 98 F.3d 1100 (9th Cir. 1996). In the absence of evidence of tampering, there is a presumption that public officers have properly discharged their official duties. Harrington, 923 F.2d at 1374.

1

### C.   Business Records

2        At trial, the government anticipates offering business records

3   into evidence.  Such records of "regularly conducted activity" fall

4   within an exception to the rule against hearsay and are admissible

5   either through "the testimony of the custodian or another qualified

6   witness" or "by a certification that complies with Rule 902(11)."

7   Fed. R. Evid. 803(6)(D).  In this case, the government has chosen the

8   latter option with respect to certain records, and has provided

9   copies of those records in discovery to defense counsel along with

10   certifications by appropriately qualified custodians of records,

11   thereby affording opposing counsel "a fair opportunity to challenge

12   them."  Fed. R. Evid. 902(11).  To date, defendant has not raised any

13   objection to the admission of any of these business records.

14

### D.   Photographs

15        Photographs may be admitted as relevant evidence under Federal

16   Rule of Evidence 401 if they illustrate a witness's testimony.  In

17   such circumstances, the photograph is authenticated if the witness

18   testifies that it is an accurate representation of facts of which the

19   witness has personal knowledge, and "the witness who lays the

20   authentication foundation need not be the photographer, nor need the

21   witness know anything of the time, conditions, or mechanisms of the

22   taking of the picture."  32 McCormick On Evid. § 215 (7th ed.); see

23   also Fed. R. Evid. 1002 advisory committee's note.  Thus, for

24   example, it is suitable for a witness to identify a photograph by the

25   individuals depicted in it regardless of his knowledge of the

26   particular circumstances under which the photograph was taken.

27   "Under the Federal Rules, the witness identifying the item in a

28   photograph need only establish that the photograph is an accurate

portrayal of the item in question."  <u>People of Territory of Guam v.</u> <u>Ojeda</u>, 758 F.2d 403, 408 (9th Cir. 1985).  Indeed, "[a] photograph can be authenticated by someone other than the photographer if he recognizes and identifies the object depicted and testifies that the photograph fairly and correctly represents it."  <u>See</u> <u>United States v.</u> <u>Winters</u>, 530 F. App'x 390, 395 (5th Cir. 2013) (citations/quotations omitted).

### E.   Certified DMV Records

The government intends to introduce certified Minnesota Department of Motor Vehicle records.  Certain public records in the form of domestic public documents under seal, or certified copies of public records, which do not require extrinsic evidence of authenticity as a condition precedent to admissibility, are admissible.  Fed. R. Evid. 902(1) and 902(4).  Such records are self-authenticating, Fed. R. Evid. 902(4), and not hearsay, Fed. R. Evid. 803(8).

### F.   Truth Testimony Provision of Cooperation Agreement

The government may not vouch for the credibility of its witnesses by presenting the jury with personal assurances of the witness's veracity.  However, a reference to the "truthful testimony" provisions of a witness's cooperation agreement with the government does not constitute vouching if it is made in response to an attack on the witness's credibility because of his plea bargain.  <u>United</u> <u>States v. Monroe</u>, 943 F.2d 1007, 1013 (9th Cir. 1991).  To introduce such a "truthful testimony" provision of a cooperation agreement, the government need not wait until re-direct examination, after the witness's credibility has been attacked on cross-examination. Instead, where in opening statement the defendant attacks the

1   witness's credibility because of the witness's cooperation agreement,

2   the government may introduce the "truthful testimony" provisions in

3   direct examination of the witness. Id. at 1014 (because government

4   introduced "truthful testimony" aspects of a cooperator's plea

5   agreement only after defendant had attacked cooperator's credibility

6   in opening statement, government did not vouch for cooperator).

7        **G.   Expert Testimony**

8       The government provided defense counsel notice of its intent to

9   call certain expert witnesses on October 5, 2021, including a drug

10   chemist and a certified translator.  Defendant has raised no

11   objection to the government' use of these experts.

12        **H.   Use of Exhibits During Opening Statement**

13       Exhibits may be used by the government in the opening statement,

14   and so long as the opening statement "avoids references to matters

15   that cannot be proved or would be inadmissible, there can be no

16   error, much less prejudicial error."  United States v. De Peri, 77826

17   F.2d 963, 979 (3d Cir. 1985); see also United States v. Rubino, 43127

18   F.2d 284, 290 (6th Cir. 1970).

19       In particular, the government currently believes it will likely

20   use photographs of defendant, as well as the car and drugs seized

21   during the incident.  The government intends to identify the

22   photographs that it will use in its opening to the defense.

23        **I.   Cross-Examination of Defendant**

24       A defendant who testifies at trial may be cross-examined as to

25   all matters reasonably related to the issues he or she puts in

26   dispute during direct examination.  "A defendant has no right to

27   avoid cross-examination on matters which call into question his claim

28   of innocence."  United States v. Miranda-Uriarte, 649 F.2d 1345,

1353-54 (9th Cir. 1981).  The government is not required to provide notice of matters about which it may seek to cross-examine defense witnesses, including defendant, should they testify.

### J.    Reciprocal Discovery and Expert Disclosures

The government has requested reciprocal discovery and expert disclosures from defendant.  To the extent defendant attempts to introduce or use documents at trial that have not been previously produced, or to use experts not previously disclosed, the government reserves the right to seek to preclude their use.

### K.    Character and Impeachment Evidence

#### 1.    Character Evidence

The Supreme Court has recognized that character evidence -- particularly cumulative character evidence -- has weak probative value and great potential to confuse the issues and prejudice the jury.  See Michelson v. United States, 335 U.S. 469, 480, 486 (1948). The Court has thus given trial courts wide discretion to limit the presentation of character evidence.  Id.

In addition, the form of the proffered evidence must be proper. Federal Rule of Evidence 405(a) sets forth the sole methods for which character evidence may be introduced.  It specifically states that, where evidence of a character trait is admissible, proof may be made in two ways: (1) by testimony as to reputation and (2) by testimony as to opinion.  Thus, a defendant may not introduce specific instances of his or her good conduct through the testimony of others. See Michelson, 335 U.S. at 477.  On cross-examination of a defendant's character witness, however, the government may inquire into specific instances of a defendant's past conduct relevant to the character trait at issue.  See Fed. R. Evid. 405(a).  In particular,

13

1    a defendant's character witnesses may be cross-examined about their

2    knowledge of the defendant's past crimes, wrongful acts, and arrests.

3    See Michelson, 335 U.S. at 481.  The only prerequisite is that there

4    must be a good faith basis that the incidents inquired about are

5    relevant to the character trait at issue.  See United States v.

6    McCollom, 664 F.2d 56, 58 (5th Cir. 1981).

7          2.   Prior Convictions

8       At this time, the government does not intend to introduce in its

9    case-in-chief evidence of defendants' prior felony convictions.

10   However, should defendant testify in his own defense, the government

11   should also be permitted to use any prior felony convictions whose

12   sentences are less than ten years old as impeachment evidence.  Fed.

13   R. Evid. 609; 403.[3]

14      **L.**   **Affirmative Defenses**

15       Defendants have not given notice of any intent to rely on any

16   defense of entrapment, mental incapacity, alibi, or any other

17   affirmative defense.  Therefore, to the extent defendants may attempt

18   to rely on such a defense, the government reserves the right to

19   object and to move to preclude defendants from asserting such a

20   defense.

21      **M.**   **Jury Nullification**

22       To the extent any defendant attempts to raise improper defenses,

23   the Court should exclude any evidence or argument relating to any

24

25       [3] In balancing the probative value of a prior conviction as
impeachment material versus the danger of prejudice, the Court must

26   look at five factors: "(1) the impeachment value of the prior crime;
(2) the point in time of the conviction and the witness's subsequent

27   history; (3) the similarity between the past crime and the charged
crime; (4) the importance of defendant's testimony; and (5) the

28   centrality of defendant's credibility."  United States v. Hursh, 217
F.3d 761, 768 (9th Cir. 2000).

possible jury nullification defense.  It is well-established that a defendant does not have a right to a jury nullification instruction. United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1992).  Having no right to seek jury nullification, a defendant has no right to present evidence relevant only to such a defense.  Zal v. Steppe, 968 F.2d 924, 930 (9th Cir. 1992) (Trott, J., concurring) ("[N]either a defendant nor his attorney has a right to present to a jury evidence that is irrelevant to a legal defense to, or an element of, the crime charged.  Verdicts must be based on the law and the evidence, not on jury nullification as urged by either litigant.").  And, in any event, under Federal Rules of Evidence 401 and 403, such arguments or evidence are not relevant to any valid defense to the offense charged and will unnecessarily confuse the issues and mislead the jury.

In particular, the defendant should not be permitted to introduce evidence concerning his employment, the financial dependency of family members, or difficult upbringing.  Similarly, defendant should not be permitted to introduce any evidence regarding Redemption Theory.  (See Dkt. 341.)  None of this information is relevant to any material issue and their minimal probative value is substantially outweighed by the risk of unfair prejudice and confusion of the issues.  See Fed. R. Evid. 401, 403.